STATE OF NORTH CAROLINA v. HAROLD EDWARD JACKSON

No. 55

(Filed 15 March 1972)

1. Indictment and Warrant § 12; Narcotics § 2— dispensing narcotics to minor — amendment of indictment — allegation of defendant's age

The trial court erred in allowing the State to amend an indictment for dispensing narcotics to a minor to include therein an allegation that defendant was "an adult person, age 25."

2. Narcotics § 2— dispensing drugs to minor — indictment — age of defendant

An indictment for dispensing drugs to a minor need not allege the age of defendant or that defendant is an adult in order to charge an offense punishable under G.S. 90-111(c), since the age of defendant is not an element of the crime but is relevant only on the subject of punishment.

3. Narcotics § 5— adult's dispensation of drugs to minor — punishment — validity of statute

Statute setting forth the punishment for dispensing narcotic drugs when the dispensation is "to a minor by an adult," G.S. 90-111(c), is not unconstitutionally vague and indefinite in failing to define the words "minor" and "adult" as used therein.

4. Infants § 1— "minor" defined

Except when otherwise provided by statute, a person, male or female, is a minor until he attains the age of twenty-one years.

5. Criminal Law § 75— in-custody statements volunteered by defendant — absence of waiver of counsel

Statements made by defendant to officers at his apartment after his arrest in October 1970 were properly admitted in evidence, notwithstanding defendant had not waived his right to counsel either in writing as provided by [former] G.S. 7A-457 or orally as provided by the Miranda decision, where the statements were not made in response to interrogation by the officers but were volunteered by defendant.

6. Criminal Law § 75— in-custody statements — under influence of drugs

Defendant was not under the influence of drugs so as to render his in-custody statements incompetent if he knew what was being said and done on the occasion the statements were made.

7. Criminal Law § 75— in-custody statements — influence of drugs — sufficiency of court's findings

The trial court's findings that defendant was aware of the presence of the officers and that he understood his constitutional rights when he made statements to the officers at his apartment after his arrest were substantially equivalent to a finding that defendant understood what was being said and what was transpiring on that occasion, and failure of the court to make an explicit finding with reference to whether defendant was under the influence of drugs at that time did not render incompetent testimony as to the statements made by defendant.

APPEAL by defendant from *Johnston, J.,* December 4, 1970 Session of GUILFORD Superior Court, transferred for initial appellate review by the Supreme Court under general order of July 31, 1970, entered pursuant to G.S. 7A-31(b)(4), docketed and argued at Fall Term 1971 as No. 15.

The indictment on which defendant was tried contained two counts: The *first count* charged that defendant "did unlawfully, wilfully, and feloniously have in his possession and under his control the narcotic drugs, Cannabis, commonly known as Marijuana, and D-Lysergic Acid Diethylamide, commonly known as LSD, in violation of Chapter 90, Section 88, of the General

Statutes of North Carolina." The *second count* charged that defendant "did unlawfully, wilfully and feloniously dipense to one Neil Cooper, age 15, the narcotic drugs, Cannabis, commonly known as Marijuana, and D-Lysergic Acid Diethylamide, commonly known as LSD, in violation of Chapter 90, Section 88, of the General Statutes of North Carolina." Each count alleged that the criminal offense charged therein was committed on September 27, 1970. Defendant entered pleas of not guilty.

On account of defendant's indigency, the court appointed the public defender to represent him.

The only evidence was that offered by the State. Summarized, except when quoted, it tends to show the facts narrated below.

Norman Neil Cooper (Neil) testified that on a Saturday, which he thought was September 27, 1970, but in fact was September 26, 1970, defendant drove him to defendant's apartment and gave him "the drugs to sell for him." Specifically, defendant gave Neil "LSD and Marijuana." Neil had first met defendant near the University of North Carolina at Greensboro campus in the early part of the summer, probably June. Neil had been going to this area for some months and had been buying drugs and using them. Drugs were "rampant." Neil saw defendant several times afterward, usually in the same vicinity. After arriving at defendant's apartment on the day in question, the two talked, and Neil voiced concern about getting caught. However, defendant "was always saying that if I did get caught, you know, that since I was a juvenile, I wouldn't get but eight years [months], and it wouldn't be that much of a sweat." Neil was not certain, but he believed the amount of marijuana defendant gave him was "a half pound or a pound." He and defendant "bagged" the marijuana at defendant's apartment in several cellophane bags. Defendant gave him in addition, thirty "tabs" of LSD. An arrangement was established by which Neil would receive a percentage of the take. Neil did not recall discussing his age with defendant, but he thought he had mentioned to defendant that he went to Page High School. Neil was born on November 23, 1954, and in September, 1970, he was 15 years old.

On the morning of Tuesday, September 29, 1970, Neil was arrested at Page High School by Officer G. A. Cox of the Vice

Division of the Greensboro Police Department. On Officer Cox's request, the assistant principal called Neil out of his biology class, and Cox arrested Neil in the hallway. Neil had called him fifteen minutes before. Nevertheless, Neil seemed surprised and reached in his pocket. Cox searched Neil's pocket and found four small pills. Neil confessed that, in addition, he had some marijuana in his boot. On the way to the police department Neil stated that he had more drugs at home. They went to Neil's home and found LSD, hashish, and marijuana. Altogether twelve "packs" of marijuana were found, ten at Neil's home, two in his boots. Cox found "nine small yellowish pills" in a paper in a pipe bowl in Neil's closet. The four pills found in Neil's pocket were sent to the S.B.I. Crime Laboratory in Raleigh to be analyzed. Cox testified that the four pills sent away and the other nine "looked exactly alike." One bag of marijuana was also sent. Cox compared this bag with the others not sent to Raleigh; he observed that they were wrapped alike and that they smelled "just alike." Neil was afraid to tell from whom he got the narcotics, but two days after his arrest he sent word that he wanted to talk. He stated that he had gotten the drugs from a person named Eddie, whom he described. He also described where this person lived.

Officer J. D. Heffinger of the Vice Division of the Greensboro Police Department, accompanied by Officer Cox, went to defendant's apartment about noon on Monday, October 12, 1970. He advised defendant of each of his *Miranda* rights. No questions were asked defendant "at that time." However, defendant made several statements. He said "he knew we were coming down there . . . ever since he found out that a kid had been arrested for some stuff that he had gave him." Defendant stated to Heffinger that he had known "this boy by the name of Neil" for several months, that Neil "looked to be about twenty years old instead of fifteen" (this before any mention to defendant of Neil's age), and that "he knew nothing of Neil selling drugs for him." Defendant stated to Heffinger that "he started fooling with Marijuana while he was overseas serving in Vietnam" and that "after he was fired from his job here in Greensboro he had to make a living some way." Cox overheard defendant make these remarks to Heffinger, as he was investigating defendant's refrigerator, and he corroborated Heffinger's testimony.

Officer Robert D. Brewer, also of the Vice Division of the Greensboro Police Department, delivered the aforementioned bag of marijuana and four tablets of LSD to J. M. Dismukes, a chemist for the S.B.I. Crime Laboratory in Raleigh. Dismukes was found to be an expert in the analysis of marijuana and LSD. He testified that the sealed plastic bag contained "green vegetable material" which was, in his opinion, "high quality Marijuana," according to microscopic and chemical examinations. The four yellow tablets in the sealed yellow envelope, under chemical, ultraviolet, and chromatographic testing, were found to contain lysergic acid diethylamide. On the stand Dismukes asserted that the cellophane packages that had not been sent to Raleigh appeared "identical" with the one that had been sent, "being high quality manicured Marijuana."

Officer Cox was recalled to the stand to explain that his notation, "7-29-70," on Exhibit 5 (LSD from Neil's pocket) and the same notation on Exhibit 2 (LSD found at Neil's home) were erroneous and should have been "9-29-70."

The State was permitted to reopen its case to recall Officer Heffinger. He testified that on October 12, 1970, defendant stated that he was twenty-five years old and that his birthday was February 13, 1945.

Evidence offered at the *voir dire* hearing conducted to determine the admissibility of testimony as to statements made by defendant on October 12, 1970, in defendant's apartment, will be set forth in the opinion.

The jury returned a verdict of guilty as charged on each count. The court pronounced judgments of imprisonment on the verdicts as follows: On the first count, two years; on the second count, ten years. It was provided that the sentences run concurrently. Defendant excepted and appealed.

*Attorney General Morgan and Assistant Attorney General Harris for the State.*

*Wallace C. Harrelson, Public Defender, for defendant appellant.*

BOBBITT, Chief Justice.

Each count charged a violation of G.S. 90-88, which provided: "It shall be unlawful for any person to manufacture,

possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this article [Chapter 90, Article 5]." The *first count* charged that defendant had possession and control of the described narcotic drugs; the *second count* charged that defendant dispensed them to one Neil Cooper, age 15. The State offered no evidence that defendant had possession and control of any narcotic drugs except those he dispensed to Neil.

Punishment for violation of G.S. 90-88 is set forth in G.S. 90-111. Section (a) of the latter statute provides a penalty for first violation by "any person" of not more than five years in prison. Section (c) increases the penalty to a *minimum* of ten years if the offense of dispensation is "to a minor by an adult."

Defendant's brief does not bring forward and discuss the assignments of error based on defendant's exceptions to the overruling of his motions for judgments as in case of nonsuit.

The record shows that "[p]rior to the introduction of evidence by the State, the defendant, through counsel, moved to quash the bill of indictment." Assignment of Error No. 1 is based on defendant's exception to the denial of this motion.

The record does not disclose the grounds, if any, advanced in the court below in support of the motion to quash. On appeal, defendant asserts (1) that the second count does not charge a criminal offense punishable under G.S. 90-111(c) in that it does not allege that defendant is an adult; and (2) that G.S. 90-111(c) is unconstitutionally vague and indefinite in that it does not define the words "minor" and "adult" as used therein.

[1] While the jury deliberated, the court, allowing the solicitor's motion therefor, entered an order purporting to amend the *second count* by including therein an allegation that defendant was "an adult person, age 25." Defendant's Assignment of Error No. 28, based on his exception to the purported amendment, has merit. "In the absence of statute, an indictment cannot be amended by the court or prosecuting officer in any matter of substance without the consent of the grand jury which presented it." 42 C.J.S. *Indictments and Information* § 230(a). Accord: *State v. Corpening,* 191 N.C. 751, 133 S.E. 14 (1926); *State v. Dowd,* 201 N.C. 714, 161 S.E. 205 (1931); *State v. Cole,* 202 N.C. 592, 163 S.E. 594 (1932). See Comment Note, Power

of court to make or permit amendment of indictment, 17 A.L.R. 3d 1181 et seq. We do not consider to what extent, if any, a bill of indictment may be amended with the consent of a defendant and his counsel. Suffice to say, this defendant did not consent to the amendment.

[2] We hold the *second count*, without amendment, sufficiently charged a criminal offense in violation of G.S. 90-88 which, if committed by an adult person, is punishable under G.S. 90-111(c). G.S. 90-111(c) does not define or create a criminal offense. The age of defendant is not an element of the crime; it is relevant only on the subject of punishment. By analogy, under former G.S. 14-33 (Volume 1B, Recompiled 1953) simple assault was punishable as a general misdemeanor when committed by a male person over 18 years of age on a female person, but punishable only by thirty days imprisonment if committed by a male person 18 years of age or less. Since it was not an essential element of the criminal offense, it was not required that the indictment allege that the defendant was a male person over 18 years of age at the time of the alleged assault. *State v. Courtney*, 248 N.C. 447, 103 S.E. 2d 861 (1958), and cases cited; *State v. Beam*, 255 N.C. 347, 121 S.E. 2d 558 (1961). Here, although the indictment did not allege the age of defendant or that he was an adult, the State offered evidence that defendant was 25 years of age and *the jury so found*. With reference to the second count, the trial judge instructed the jury as follows: "[I]f the State has satisfied you beyond a reasonable doubt, the burden being on the State to so satisfy you, that on the 27th day of September, 1970, this defendant was twenty-five years of age, or more than twenty-one years of age, and that Neil Cooper was fifteen years of age, having been born on November 23, 1954, and that the defendant dispensed to him any quantity of Marijuana or LSD, and if the State has so satisfied you beyond a reasonable doubt, it will be your duty to convict him as charged in the second count of the bill of indictment. If the State has failed to so satisfy you, it will be your duty to acquit him of that second count."

Defendant contends he was prejudiced because he was not advised by the indictment that he was to be tried for an offense punishable under G.S. 90-111(c). This contention is without substance. The second count alleges explicitly the age of Neil Cooper. No allegation was required to notify defendant of his own age.

Defendant seems to rely largely on *State v. Miller*, 237 N.C. 427, 75 S.E. 2d 242 (1953), which holds: "Where a statute prescribes a higher penalty in case of repeated convictions *for similar offenses*, an indictment for a subsequent offense must allege facts showing that the offense charged is a *second* or *subsequent crime within the contemplation of the statute* in order to subject the accused to the higher penalty." (Our italics.) Although the decision in *Miller* was based primarily on G.S. 15-147, due process would seem to require that the State identify by allegation any previous conviction of defendant on which it intended to rely as a basis for the imposition of greater punishment. In such case, the identity and relevance of prior court proceedings are involved. Absent such allegations, the defendant would be brought to trial without notice of matters necessary to enable him to prepare his defense. Neither a statute nor an infringement of due process supports defendant in the present case.

[3, 4] There is no merit in defendant's contention that G.S. 90-111 (c)—the punishment statute—is unconstitutional because it fails to define "minor" and "adult" as used therein. Under the common law, persons, whether male or female, are classified and referred to as *infants* until they reach the age of twenty-one years. *Personnel Corp. v. Rogers*, 276 N.C. 279, 281, 172 S.E. 2d 19, 20 (1970). "In the law the word 'infant' refers to a person who has not arrived at his majority as fixed by law, and the word 'infancy' as used in law means minority or non-age." 42 Am. Jur. 2d *Infants* § 1. Except when otherwise provided by statute, a person, male or female, is a minor until he attains the age of twenty-one years. Upon attaining the age of twenty-one years a person reaches his or her majority and is an adult. These common-law definitions apply to the words "minor" and "adult" as used in G.S. 90-111 (c) as of September, 1970.

We take notice of the fact that the General Assembly of 1971 enacted Chapter 585 of the Session Laws of 1971, which provides: "§ 48A-1. Common law definition of 'minor' abrogated.—The common law definition of minor insofar as it pertains to the age of the minor is hereby repealed and abrogated." "§ 48A-2. Age of minors.—A minor is any person who has not reached the age of 18 years." We need not consider in what respects, if any, the words "minor" and "adult" as used in G.S.

90-111(c) have been modified by the 1971 Act. Under any permissible definition, a 15-year-old boy is a minor and a 25-year-old man is an adult.

Defendant assigns as error the admission of testimony of Officers Heffinger and Cox as to statements by defendant on October 12, 1970, in defendant's apartment, which testimony is summarized in our statement of facts.

After Heffinger was put on the stand and gave testimony leading up to the statements that defendant was alleged to have made on the occasion of his arrest, defendant's counsel "moved for a voir dire examination concerning the voluntariness of any statement made to the investigating officer." The jury was excused and a *voir dire* hearing was conducted. The State offered the testimony of Heffinger. Defendant's counsel "put the defendant on for the limited purpose of this voir dire examination." The testimony, except when quoted, is summarized below.

On *voir dire*, Heffinger testified that he advised defendant with particularity of each of his constitutional rights as stated in *Miranda;* that defendant said he understood his rights; that defendant appeared to be normal and to understand what Heffinger said to him; that he made no threats against defendant to get him to make a statement; that he did not offer defendant any inducement or hope of reward; and that, after having been so advised by Heffinger, "certain conversation did follow." Thereupon, Heffinger was cross-examined by defendant's counsel. On cross-examination, he testified that defendant made no specific statement or comment "as to his right to have a lawyer" and that defendant did not tell him "that he had been taking LSD on that particular day."

On *voir dire*, defendant testified that three officers, Heffinger, Cox and a third officer (later identified as Gibson in Cox's testimony before the jury), came to his apartment on West Fisher Avenue around twelve o'clock noon on October 12, 1970; that when Heffinger knocked on the door, he stated he was a police officer and defendant "let him in"; that defendant let "them" in after "they" told him they had a search warrant; that, upon entering the apartment, one of the officers handcuffed defendant while the search warrant was being read to him; that there was "mass confusion"; that Heffinger was

talking "about one thing" and the others were searching the apartment.

Defendant testified further that although he could not deny that he was advised of his rights, including the right to have a lawyer present when the officers talked to him, he "didn't fully understand it"; that he (defendant) "didn't make any comment at all about [his] rights"; that, after they had searched the apartment, the officers told defendant that he was under arrest and took him into custody; that he was not advised "specifically" at that time what he was "under arrest for"; that no warrant of arrest was served on defendant until "[a]pproximately nine o'clock that night"; and that he first realized that he was "charged with dispensing drugs to a juvenile" when they served the warrant on him.

Defendant testified further that, when the officers arrived at his apartment, defendant was "still feeling the effects" of "more than the usual dosage" of LSD; that he had taken four tablets the night before and was "still to some extent under the influence" of it; and that he "was in a confused state of mind," being partly under the influence of LSD "[a]nd marijuana."

On cross-examination, defendant testified that he was twenty-five years of age; that he had a high school education; and that he had spent seven years in the army where he had approximately five years of training in electronics. Referring to what occurred in defendant's apartment about twelve o'clock noon on October 12, 1970, the solicitor's question and defendant's answer are as follows: "Q. And you don't know whether you told them anything or not about Neil Cooper on that day? A. I did not specify any name, but I made a comment or something about Neil—something or other—I can't recall the exact conversation because, like I said, you know the whole situation was—I wasn't aware of what was really going on." When asked if he did not tell the officers "that [he] gave Neil about ten bags of Marijuana and some LSD," defendant answered, "No," —"I think I made remarks later on that night when I was being interrogated." Asked if he did not tell the officers that he had seen Neil and had a transaction with him about two weeks prior to the time that they were there in his apartment, defendant answered: "I recall a conversation more or less in that direction, yes." Upon further redirect examination with reference to an interrogation subsequent to the occasion of his

arrest, defendant answered: "I think it was two days later in the evening."

At the conclusion of the *voir dire* hearing, the court made the following findings of fact:

"THE COURT: Let the record show that on the occasion that Mr. Heffinger and the other two police officers went to the apartment of the defendant with a search warrant; that the defendant was warned of his constitutional rights under the Miranda decision; and that thereafter that any statements that were made were voluntary to the police officers, and made without any offer of reward or hope of reward or without any threats being made upon him.

"The Court is of the opinion and further finds as a fact that the defendant on the occasion was aware of the presence of the officers; that they were there with a search warrant; and that they were naming to him his rights under the rules of the Miranda decision; that he knew and understood from what the officers told him what his constitutional rights were."

We note here that no questions were raised concerning the validity of the search warrant and no evidence was offered as to the results of the search.

Defendant excepted "to the failure of the court to make adequate and appropriate findings of fact and conclusions of law consistent with the evidence produced on the voir dire examination." Assignment of Error No. 6 is based on this exception. Assignments of Error Nos. 7 and 8 are based on defendant's exceptions to the admission of the testimony of Heffinger and Cox as to statements made by defendant.

The main thrust of defendant's argument in support of Assignment of Error No. 6 is that the findings were insufficient to show that defendant had waived his right to counsel either orally or in writing. Defendant also argues that the findings are deficient in that there is no specific finding that defendant was not under the influence of narcotics on October 12, 1970, when he and the officers were in his apartment.

[5] There was no evidence or findings to show that defendant, when talking with the officers at his apartment on October 12, 1970, had waived his right to counsel, either in writing as provided by G.S. 7A-457 (1969 Replacement Volume), the stat-

ute on which *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971), is based, or orally as provided by *Miranda,* the decision on which *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971), is based. Since defendant was then arrested and in custody, the testimony as to what defendant said on that occasion would be incompetent if defendant's statements were made *in response to interrogation* by officers. But there was no evidence that defendant was interrogated by any officer on that occasion. (Note: Defendant testified on *voir dire* to an incriminating statement made by him when interrogated *on a subsequent occasion.* The State offered no evidence as to comments or statements by defendant except those made by him to the officers at his apartment around the noon hour on October 12, 1970.) Under the circumstances disclosed by the evidence, the volunteered statements then made by defendant were admissible under *Miranda* as fully stated in our prior decisions. *State v. Gladden,* 279 N.C. 566, 570, 184 S.E. 2d 249, 252 (1971), and cases cited; *State v. Chance,* 279 N.C. 643, 661-62, 185 S.E. 2d 227, 238-39 (1971), and cases cited. The inherent nature of the comments or statements made by defendant on the occasion of his arrest supports the evidence that they were made spontaneously rather than in response to interrogation.

We consider next whether the testimony as to what was said by defendant when talking with the officers at his apartment on October 12, 1970, was incompetent because the trial judge failed to make an explicit finding with reference to whether defendant was under the influence of drugs when the comments or statements were made. Defendant also contends that Judge Johnston's findings are insufficient because they were essentially conclusions of law rather than findings of fact, citing *State v. Conyers,* 267 N.C. 618, 148 S.E. 2d 569 (1966), and *State v. Moore,* 275 N.C. 141, 153-54, 166 S.E. 2d 53, 62 (1969).

Judge Johnston found as a fact that the police officers went to the apartment of defendant with a search warrant. Both Heffinger and defendant testified to that effect. Judge Johnston found that defendant was warned of his constitutional rights. Heffinger testified that defendant was advised specifically as to each of his constitutional rights as listed in *Miranda.* Defendant testified that he remembered something about his rights; and that, although he could not deny having been ad-

State v. Jackson

vised of his rights, he "didn't fully understand it, no." Judge Johnston found that any statements made by defendant to the police officers were made voluntarily in that they were "made without any offer of reward or hope of reward or without any threats being made upon him." Heffinger so testified. Defendant did not contradict this testimony.

[6] With reference to whether defendant was under the influence of drugs on October 12, 1970, when the officers were with him in the apartment, the crucial fact is whether defendant knew what was being said and done on that occasion. Only defendant could have known when and to what extent he had taken drugs. The officers could testify only to what defendant said and did on that occasion. While there is no explicit finding with reference to drugs, Judge Johnston did find as a fact "that the defendant on the occasion was aware of the presence of the officers; . . . [and] that he knew and understood from what the officers told him what his constitutional rights were." There was ample evidence to support these findings of fact.

[7] While more explicit phraseology might have been used, we consider the findings that defendant was aware of the presence of the officers and that he understood his constitutional rights as substantially equivalent to a finding that defendant understood what was being said and what was transpiring on that occasion. Moreover, counsel for defendant did not request a specific finding about whether defendant was under the influence of drugs or whether his statements were understandingly made, nor did he except on the ground that the court had failed to make such a finding. Doubtless Judge Johnston would have made a more explicit finding if he had been requested to do so by defendant. Under the circumstances here considered, we hold that Judge Johnston's findings of fact constituted a sufficient basis for the admission of the evidence of volunteered statements attributed to defendant on the occasion of his arrest.

Defendant lists thirty-one assignments of error. All have been considered. Assignments not discussed specifically herein do not disclose prejudicial error or require discussion.

We note that ten years imprisonment was the minimum punishment for the criminal offense charged in the *second count* of the bill of indictment. G.S. 90-111(c), G.S. Vol. 2C,

Replacement 1965. Moreover, ten years is the minimum punishment under G.S. 90-95(i), G.S. Vol. 2C, 1971 Cumulative Supplement. Error, if any, relating solely to the first count is of no avail to defendant since the sentences pronounced by Judge Johnston run concurrently.

Defendant having failed to show prejudicial error, the verdicts and judgments will not be disturbed.

No error.