STATE OF NORTH CAROLINA v. ROGER M. BLACKWELDER

No. 7712SC394

(Filed 2 November 1977)

1. **Searches and Seizures § 1— authority to search stopped vehicle—motor vehicle statute**

   An officer was not authorized by G.S. 20-183(a) to remove the driver of a vehicle which he had stopped and to search the vehicle where the officer did

not find that the driver had violated a motor vehicle statute but stopped and searched the vehicle for the purpose of determining whether the driver possessed contraband drugs.

**2. Searches and Seizures § 1— authority to search stopped vehicle—plain view doctrine**

The "plain view" doctrine did not justify an officer's seizure of a tic tac box containing LSD tablets from under the front seat of an automobile driven by defendant after the officer had stopped the vehicle for the purpose of determining whether it contained contraband drugs.

**3. Searches and Seizures § 1— search of automobile—furtive acts of occupants**

An officer did not have probable cause to search an automobile driven by defendant for narcotics because of "furtive movements" by defendant and other occupants of the automobile where the officer, after turning on his blue light to stop the automobile, saw some commotion inside and saw defendant lean or bend down, the officer could see that neither defendant nor the other occupants were the suspect he was seeking, and the officer had no specific knowledge relating defendant to the trafficking in narcotics which he was investigating.

PLAINTIFF appeals from *Herring, Judge.* Order entered 10 February 1977 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 29 September 1977.

Defendant was charged with felonious possession with intent to sell and deliver lysergic acid diethylamide ("LSD"). Before trial, defendant moved to suppress evidence as seized in an illegal search. A plenary hearing was held on the motion.

State's evidence tended to show that, on 6 January 1976, S.B.I. Agent Mills and two C.I.D. agents attached to Fort Bragg saw a 1963 Plymouth Valiant parked at a motel near Bragg Boulevard, Fayetteville. Agent Mills knew that this vehicle was registered to Ernest Faircloth and that it had been involved in a narcotics transaction two nights before. Mills was seeking the man, Michael Mura, who had been operating the vehicle then. Agent Mills and the C.I.D. agents followed the vehicle for several blocks and saw three men, two in the front, one in the rear. Mills testified that, while he recognized none of the men, he would have recognized Mura if he had seen him. Mills turned on his blue light and stopped the suspect car. While the car was stopping, he saw some commotion inside and saw the driver lean or bend down. Mills walked up to the car and pulled the defendant-driver out. He testified that he knew the defendant and recognized him when he pulled in front of the car, that he knew defendant was not

Mura or Faircloth. After Mills took the defendant out of the car, he went back, reached under the front seat and picked up a tic tac box with some purple tablets in it. Mills testified that he had seen such tablets before; that they were "LSD." He arrested defendant for felonious possession.

Defendant testified on his own behalf that he had borrowed the car from Ernest Faircloth and that when he saw Mills' blue light he pulled over directly without bending down, that he sat straight up in his seat until "Mills and the C.I.D. yanked us out."

The judge made findings of fact and concluded that there had been no probable cause to stop the car and remove the defendant and search. The judge ordered the LSD evidence suppressed. From that order the State appeals.

*Attorney General Edmisten by Associate Attorney Richard L. Griffin for the State, appellant.*

*Public Defender Mary Ann Tally for defendant appellee.*

CLARK, Judge.

The State assigns as error the court's order to suppress the evidence on the grounds that seizure of the contraband was a violation of the defendant's constitutional Fourth Amendment protection against illegal searches and seizures.

[1]  The State contends first that Agent Mills had a right to stop the car and remove the driver pursuant to G.S. § 20-183(a), which reads in pertinent part:

"It shall be the duty of the law-enforcement officers of this State . . . to see that the provisions of this Article are enforced within their respective jurisdictions, and *any such officer shall have the power to arrest on sight or upon warrant any person found violating the provisions of this Article.* Such officers within their respective jurisdictions shall have the *power to stop* any motor vehicle upon the highways of the State *for the purpose of determining whether the same is being operated in violation of any of the provisions of this Article. . . .*" [Emphasis added.]

Mills made no claim that he stopped defendant's vehicle to determine whether the Motor Vehicle Act was being violated.

The power to stop is not dependent on probable cause to believe a violation has occurred. *State v. Dark* so held, stating that at least one of the purposes of the power was to permit officers to run license and registration checks. *State v. Dark*, 22 N.C. App. 566, 207 S.E. 2d 290, *cert. den.* 285 N.C. 760, 209 S.E. 2d 284 (1974). But it is not necessary in the instant case to decide whether the stopping was statutorily permissible, since it is clearly the removal of the defendant and the search that is at issue.

The power to stop a vehicle under G.S. 20-183 does not include the power to search. The power to search incident to a warrantless arrest is clearly limited to situations where the officer, after stopping the vehicle, has found a person "violating the provisions of this Article." There is no evidence that Agent Mills stopped the vehicle operated by defendant for the purpose of determining if he had violated a motor vehicle statute. Rather, the obvious purpose in stopping the vehicle was to determine if defendant possessed contraband drugs. The question before us is not the right to stop, but the right to remove defendant from and search the vehicle.

[2] The State contends that the tic tac box was seized legally under the "plain view" doctrine. We find no support for this contention in either the statutory or case law of this State. G.S. 15A-231 incorporates the U.S. Supreme Court "plain view" exception which permits inclusion of the fruit of a legal, warrantless presence, recognizing "[c]onstitutionally permissible searches and seizures which are not regulated by the General Statutes of North Carolina. . . ." Under G.S. 15A-253, the statutory "plain view" doctrine is limited to the inadvertent discovery of items pursuant to a legal search under a valid warrant though these items are not specified in the search warrant. Constitutionally permissible seizures under the "plain view" exception to the Fourth Amendment protection against warrantless searches and seizures have been restricted to those instances where the officer has legal justification to be at the place where he inadvertently sees a piece of evidence in plain view. The doctrine serves to supplement the prior justification. Plain view alone is not enough to justify warrantless seizure of evidence. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971). Two North Carolina cases, relied on by the State, also support the "right to be there" principle. *State v. Smith*, 289 N.C. 143, 221

S.E. 2d 247 (1976); *State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973). In both cases law officers stopped the vehicles under the authority of G.S. 20-183(a) and observed the item seized in plain view as they were determining whether the operator had violated a motor vehicle law.

[3] The State further contends that Mills had independent grounds for his warrantless search, that the furtive movements Mills testified he observed after stopping the vehicle gave him enough probable cause to believe that he would find "the instrumentality of a crime or evidence pertaining to a crime. . . ." to justify the automobile search. *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed. 2d 538 (1968), and cases cited therein. State relies upon *State v. Ratliff*, 281 N.C. 397, 189 S.E. 2d 179 (1972). In *Ratliff*, a first-degree murder case, the disputed evidence was a shotgun. It was found by the officer under the following circumstances which the court held demanded a finding of probable cause:

> "The officer observed defendant, apparently nude, in a parked car on the parking lot of a business establishment at midnight. Any alert officer under such circumstances would stop and investigate. When this officer stopped, defendant tried to drive away. Then he was seen brushing something out of his lap into the floorboard of the car. Then he appeared to kick something under the seat with his left leg and foot. Such suspicious, furtive conduct would alert any officer to the fact that defendant had something to hide." 281 N.C. at 404, 189 S.E. 2d at 183.

In the instant case the State's evidence shows far less suspicious furtiveness, none in fact that is not explicable by innocent fear and confusion at being pulled over by a police car. The dangers of police abuse of what Ringel calls "[f]ictitious 'furtive gestures' " to justify search after the fact are clear. Ringel, Searches and Seizures, Arrests and Confessions (1976 Supp.), 152.

The removal of defendant and search of the vehicle might also have been justified had Mills had probable cause to believe that defendant or some other person in the car was committing a crime. The search of an automobile or a person incident to a legal although warrantless arrest proceeds on a theory entirely different from that justifying the search on probable cause to

believe the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Ratliff, supra*. The U.S. Supreme Court has discussed the sort of "furtive gesture" which may, if added to other suspicious circumstance, generate sufficient probable cause to believe a crime is being committed and to arrest and search:

> "[D]eliberately furtive actions . . . are strong indicia of *mens rea* [initial emphasis] and *when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest*." [Emphasis added.] *Sibron v. New York*, 392 U.S. 40, 66-67, 88 S.Ct. 1889, 1904, 20 L.Ed. 2d 917, 937 (1968).

The gestures in the instant case were, as discussed earlier, not clearly furtive. Mills testified that, when he turned on his blue light to stop the car he could see that neither the defendant nor the others were the suspects he was looking for. He had no "specific knowledge" relating the defendant to the "evidence of crime," the narcotic trafficking he had been investigating. The situation did not generate sufficient probable cause to justify a legal warrantless arrest or removal and search incident to it.

As the State has failed to show any error in the trial judge's conclusions of law based on his findings of fact we hold that the trial judge was correct in excluding the evidence of contraband because the defendant's Fourth Amendment right had been clearly violated by the State in obtaining the evidence.

Affirmed.

Judges MORRIS and VAUGHN concur.