STATE OF NORTH CAROLINA v. HOWARD KEITH THOMPSON, JIMMIE DALE HARDEE

No. 775SC1064

(Filed 29 August 1978)

1. **Searches and Seizures § 34— hashish in plain view in van—warrantless seizure proper**

Tinfoil-wrapped packages of hashish seized without a search warrant from the recessed tray beneath the dashboard of the van in which defendants were sitting were properly admitted into evidence in a prosecution for felonious possession of hashish where the evidence tended to show that on the occasion in question an officer was riding in a law enforcement vehicle; there had been some break-ins in the area; in the course of an investigation the law enforcement vehicle was driven up to the van in question; the officer got out of his vehicle, identified himself as a law officer, approached the van and asked the persons therein to step out and identify themselves; the officer reached across

State v. Thompson

the front seat of the van towards the driver to see the driver's identification and, while doing so, saw three tinfoil packets in an open compartment under the dashboard of the van; these packets were in plain view; and the officer, who was an expert in the identification of narcotics, formed the opinion that the contents of the tinfoil parcels, one of which was open, was hashish.

**2. Searches and Seizures § 8— warrantless arrest based on warrantless seizure of hashish — subsequent search proper**

Since the initital warrantless seizure of hashish in plain view in a van was proper, all the occupants of the van could properly be arrested and subsequently searched, and seizure of hashish pursuant to such a search was proper.

**3. Criminal Law § 75.9— defendant's statement that hashish was his — volunteered statement**

A statement by one defendant made just after his arrest that all the "stuff," referring to hashish, in a van was his and that he did not want to get anyone else in trouble was voluntary and not made in response to interrogation, and such statement was admissible whether or not the court found that defendant had been apprised of his rights.

**4. Criminal Law § 66.1— identification of defendant by officer—opportunity for observation**

The trial court properly admitted evidence relating to an officer's identification of defendant after finding that the officer had ample time and opportunity to observe defendant, since the evidence tended to show that the officer observed defendant from a distance of 40 or 45 yards for approximately five minutes under light provided by a streetlight and the interior lights of the van in which defendant sat; he then drove to within twenty feet of the van and observed defendant by light from the high-beam bulbs of his automobile directed into the open doors of the van; and he subsequently walked up to the van and observed defendant at arm's length for several minutes while talking to him.

**5. Narcotics § 4.3— hashish in van—possession—sufficiency of evidence**

In a prosecution for possession of hashish found in a van, evidence was sufficient to be submitted to the jury where it tended to show that one defendant was seated in the passenger seat in the front of the van very close to the tray from which the hashish was taken and he voluntarily told the arresting officer that "the stuff was his and he didn't want anyone else in trouble"; moreover, evidence that a second defendant owned the van and was present therein when the controlled substance was found was sufficient to allow the jury to infer that he had the power and intent to control the contraband found there.

**6. Narcotics § 4.6— proximity to drugs—jury instructions on possession—no prejudicial error**

Though the trial court's instruction, "if hashish is in plain view of a person then you could infer from that he has both the power and intent to control it, and that would be constructive possession," may not be a correct statement of the law, standing alone, defendant was not prejudiced thereby in light of the

evidence tending to show that defendant was sitting in the front passenger seat of a van directly in front of the open recessed area where hashish was found and that he stated shortly thereafter that the "stuff" was his.

Judge ERWIN dissenting.

APPEAL by defendants from *Webb, Judge.* Judgments entered 24 August 1977 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 26 April 1978.

Upon pleas of not guilty defendants were tried on bills of indictment charging them with felonious possession of more than one-tenth of an ounce of hashish. Evidence presented by the State tended to show:

At approximately 12:30 a.m. on 17 April 1977, Officer William Wolak and W. A. Lee of the Narcotics Bureau of the New Hanover County Sheriff's Department, were on routine patrol in the Fort Fisher area of said county. At a public boat ramp in the area they observed a parked van and a motorcycle.

A *voir dire* was held during which Wolak testified that the passenger door on the right-hand side of the van was open and the interior light was on; that he and Lee approached the van in order to identify the occupants because it was late at night and break-ins had been reported in the vicinity; that they approached the van from its right side and the headlights of their car shined into the van; and that Defendant Thompson was sitting in the passenger seat of the vehicle. The trial court found facts in accord with Wolak's testimony and allowed him to identify defendant Thompson.

Wolak testified before the jury that he got identification from Thompson and asked him to step out of the van; that he then "leaned across the empty passenger seat" in order to get identification from the driver; that there was an open, recessed area in the dash in front of the passenger's seat; that while he was leaning into the van he noticed tinfoil packets in the recessed area; and that one of the packets was open and contained a brown substance which he identified as hashish. A *voir dire* was held at the conclusion of which the trial court refused to suppress evidence relating to the hashish.

The trial court further found, based on Wolak's testimony, that Thompson was arrested and advised of his rights after discovery of the hashish and that Thompson then volunteered the statement that all of the "stuff" was his and that he did not want to get anyone else in trouble. Wolak further testified that Thompson and the driver were sitting in the front seats; that there was a large, open area behind the seats some ten feet from where the hashish was found; that defendant Hardee was lying in the back; that Hardee's wife and two others were also in the back of the van; and that all occupants of the van were arrested.

Officer Lee testified that he searched Hardee after his arrest and found in his pocket a packet of green vegetable matter which a chemist testified contained "point six-tenths of a gram of hashish." The chemist also testified that a packet found in the dash contained 94.2 grams of hashish. Motions to suppress were denied.

Neither of the defendants testified but defendant Thompson presented three witnesses. One of them, his mother, testified that defendant Hardee was married to Thompson's sister; that Thompson lived in Florida and his sister lived in the Fayetteville (N.C.) area; and that Thompson left Florida by plane to visit his sister several days before the incident in question.

Another witness, James Gentry, testified that he and his wife went to the Wilmington area with defendant Hardee and his wife; that the four of them went on motorcycles; that the Hardees had two vans and defendant Thompson was going to Wilmington in a van that the witness had seen the Hardees use. On cross-examination by Hardee's attorney, Gentry testified that he and Hardee reached Carolina Beach on the motorcycles; that Hardee crashed his bike against the curb and hurt his leg; that thereafter they saw Thompson with the van; and that they loaded Hardee and his bike in the van and eventually arrived at the place where they were arrested. When asked if there was a tray or little recepticle area on the dashboard, Gentry answered that he was not familiar with "Jimmy's (Hardee's) van". The witness further stated: "I know that Jimmie Hardee did not have a sleeping bag on his bike, but I don't know if there was anything else. That was all in the van."

The jury found each defendant guilty of felonious possession of hashish and from judgments imposing prison sentences of 18 months, defendants appealed.

*Attorney General Edmisten, by Associate Attorney Lucien Capone III, for the State.*

*Parker, Rice & Myles, by William G. Hussmann, Jr., for defendant appellant Thompson, and Burney, Burney, Barefoot & Bain, by Roy C. Bain, for defendant appellant Hardee.*

BRITT, Judge.

[1]   Both defendants contend the court erred in admitting into evidence the tinfoil-wrapped packages of hashish seized from the recessed tray beneath the dashboard of the van. They argue that the seizure was not made pursuant to a search warrant, nor was it justified by a probable cause-exigent circumstances exception to the warrant requirement or by the "plain-view" doctrine. We find no merit in this contention.

When defendants objected to evidence relating to the hashish found beneath the dash, the court conducted a *voir dire* hearing in the absence of the jury. Following the hearing, the court found as facts that on the occasion in question Officer Wolak was riding in a law enforcement vehicle; that there had been some break-ins in that area; that in the course of an investigation, the law enforcement vehicle was driven up to the van in question; that Wolak got out of his vehicle, identified himself as a law enforcement officer, approached the van and asked the persons therein to step out and identify themselves; that he "reached across the front seat of the van towards the driver to see the driver's identification, and while doing so, he saw three tinfoil packets in an open compartment under the dashboard of the van; that these three tinfoil parcels were in plain view; that Mr. Wolak is an expert in the identifcation of narcotics;" and that he formed the opinion that the contents of the tinfoil parcels, one of which was open, was hashish.

Findings of fact supported by competent evidence on *voir dire* are conclusive on appeal. *State v. Crews*, 286 N.C. 41, 209 S.E. 2d 462 (1974); *State v. Pike*, 273 N.C. 102, 159 S.E. 2d 334 (1968). We have examined the record and conclude that there was ample evidence to support the court's findings. We now consider

whether the facts found will support the admission of evidence
seized without a warrant.

We think the plain view doctrine applies in this case. Under
circumstances requiring no search because the item is in plain
view, no constitutional immunity from unreasonable search and
seizure arises. *State v. Legette,* 292 N.C. 44, 231 S.E. 2d 896
(1977); *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970). The
plain view doctrine requires that the officer seizing the contra-
band be in a place where he has a right to be *and* that the seized
item be plainly visible to him without further searching into an
area where the party from whom the item is seized has a
reasonable expectation of privacy. 11 Strong's N.C. Index 3d,
Searches and Seizures §§ 5-6, and cases cited therein.

Chief Judge Mallard, writing for this court, quoted from
*Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed. 2d 564, 91
S.Ct. 2022 (1971), in which it is said that "[w]hat the plain view
cases have in common is that the police officer in each of them
had a prior justification for an intrusion in the course of which he
came inadvertently across a piece of evidence incriminating the
accused." *State v. Fry,* 13 N.C. App. 39, 45, 185 S.E. 2d 256, 260
(1971), *cert. denied,* 280 N.C. 495, 186 S.E. 2d 514 (1972). In *Fry*
the police officer was investigating a traffic violation and opened
the door of a van to see the occupants therein. When he did this,
he saw that one of them was holding a bag of marijuana. The
marijuana was later admitted into evidence.

Defendants contend that the case *sub judice* is
distinguishable from *Fry* in that Officer Wolak was not in-
vestigating a traffic violation and therefore had no prior justifica-
tion for looking inside the van. Clearly, this argument is
erroneous.

A police officer who observes a van or other vehicle in an
isolated place late at night, knowing that break-ins have been re-
ported in the area, is justified in stopping it to determine its own-
ership and the identity of the occupants. *State v. Bagnard,* 24
N.C. App. 54, 210 S.E. 2d 93 (1974), *cert. denied,* 286 N.C. 416, 211
S.E. 2d 796 (1975). In *Bagnard* a highway patrolman investigating
a hit-and-run incident in the area stopped an automobile similar to
the one reportedly involved therein. When the driver of the vehi-
cle was unable to produce a registration card, the officer opened

the car door to obtain the registration number from the tag attached there. When the door was opened, the officer discovered a bag of marijuana on the floor. The seizure of the marijuana and its subsequent admission into evidence was upheld as the officer was in a place where he had a legal right to be and had inadvertently discovered the contraband. Similarly, Officer Wolak was properly in a place where he had a legal right to be.

Defendants, relying on *State v. Blackwelder*, 34 N.C. App. 352, 238 S.E. 2d 190 (1977), argue that the contraband seized in this case was not in plain view and, therefore, not inadvertently discovered. Their reliance on *Blackwelder* is misplaced.

In *Blackwelder* the officers rummaged under the seat of a stopped automobile and discovered a controlled substance. Here, Officer Wolak simply observed hashish lying on tinfoil in an open tray in a recessed area of the van's dash. This was an inadvertent discovery rather than a search. " '[T]he term [search] implies some exploratory investigation or an invasion and quest, a looking for or seeking out. The quest may be secret, intrusive, or accomplished by force.' 79 C.J.S., Searches and Seizures § 1, p. 775." *State v. Reams*, 277 N.C. 391, 396, 178 S.E. 2d 65, 68 (1970). Officer Wolak conducted no forceful, intrusive or secretive investigation. Rather, he merely seized an illegal substance lying openly before him.

We hold that the two-pronged test of *Coolidge v. New Hampshire* referred to in *State v. Fry, supra*, has been met in this case. The police officer making the seizure here was in a place where he had a right to be and inadvertently discovered the contraband.

[2] Defendant Hardee asserts error in the admission of the hashish seized from his pocket. The gist of his argument is that the initial seizure of narcotics from the van was illegal, that absent such seizure there was not any probable cause to arrest him, and that the post-arrest search of his person in which the additional contraband was discovered was tainted by the prior illegality.

Our consideration of this assignment is governed by our resolution of the first issue in this case. Because the initial seizure was valid, Hardee and the other occupants of the van could properly be arrested. Discovery of the hashish gave Officer Wolak sufficient probable cause under N.C.G.S. 15A-401 to justify

this action. Once a person is placed under arrest, he may be searched thoroughly. *State v. White*, 18 N.C. App. 31, 195 S.E. 2d 576, *cert. denied*, 283 N.C. 587, 196 S.E. 2d 812 (1973). Evidence obtained in such a search is inadmissible only if the initial arrest is improper. Since Hardee was arrested in accordance with the law, this evidence was properly admitted against him.

[3]  Defendant Thompson contends that the incriminating statement made by him at the time of the seizure of the contraband was improperly admitted into evidence as he had not been advised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 84 S.Ct. 1758 (1966).

The evidence presented on *voir dire* supports the court's finding that Thompson's statement was voluntary and was not made in response to interrogation. Such a statement is admissible whether or not the court finds that the defendant has been apprised of his rights. *State v. Jackson*, 280 N.C. 563, 187 S.E. 2d 27 (1972). "[W]here there is evidence that admissions were freely and voluntarily made without inducement by promises, threats, or coercion, reception of the admission in evidence will not be error. . . ." 4 Strong's N.C. Index 3d, Criminal Law § 75.9, p. 320.

[4]  Defendant Thompson contends that the court improperly admitted evidence relating to Officer Wolak's identification of him. He contends the officer had insufficient opportunity to observe and identify him. We find no merit in this contention.

After defendant's objection to the identification the trial judge conducted a *voir dire* at which he found that Officer Wolak had ample time and opportunity to observe defendant Thompson. Examination of the record of the *voir dire*, viewed in the light most favorable to the State, reveals that Officer Wolak observed Thompson from a distance of 40 or 45 yards for approximately five minutes under light provided by a streetlight and the interior lights of the van. He then drove to within twenty feet of the van and observed Thompson by light from the high-beam bulbs of his automobile directed into the open doors of the van. Subsequently, he walked up to the van and observed Thompson at arm's length for several minutes while talking to him. We hold that the court properly admitted the identification testimony as Officer Wolak had adequate opportunity to observe and identify Thompson.

**[5]** Both defendants contend the trial court erred in denying their motions for nonsuit. This contention has no merit.

Where there is more than a scintilla of evidence to support the allegations of the indictment, the motion for nonsuit is properly denied. Conflicts and contradictions within the testimony must be resolved by the jury. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). In a case such as the one presently considered, the State may overcome a motion for nonsuit by presenting evidence establishing the defendant's close proximity to the drug as well as incriminating circumstances or facts from which the jury might infer that the defendant has reduced the narcotic to his possession. *State v. Weems*, 31 N.C. App. 569, 230 S.E. 2d 193 (1976). The defendant's possession may be actual or constructive. *State v. Bagnard, supra.*

In Thompson's case the State's evidence was clearly sufficient to withstand a motion for nonsuit. The testimony offered, if believed by the jury, established that Thompson was seated in the passenger seat in the front of the van very close to the tray from which the hashish was taken. In addition, he voluntarily told the arresting officer that "the stuff was his and he didn't want anyone else in trouble." The illegal substance was in plain view. Defendant's location near the contraband and the additional facts introduced into evidence justified the denial of his motion for nonsuit.

In Hardee's case, evidence that he owned the van and was present therein when the controlled substance was found was sufficient to allow the jury to infer that he had the power and intent to control the contraband found there. Ownership of premises where drugs are found is sufficient to require submission of the issue of possession to the jury. *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972).

**[6]** Defendant Thompson contends the court erred in giving the following instruction to the jury:

"As I told you, if hashish is in plain view of a person then you could infer from that he has both the power and intent to control it, and that would be constructive possession. You are not required to infer that he had the power and intent to control it, however. You will consider that along with all the

other evidence in determining whether he had the power and intent to control it and there take constructive possession."

We concede that the first sentence in the quoted instruction, standing alone, may not be a correct statement of law. However, when the instruction is considered in context and in light of the evidence tending to show that defendant Thompson was sitting in the front passenger seat of the van directly in front of the open recessed area where the hashish was found, and that he stated shortly thereafter that the "stuff" was his, we perceive no error prejudicial to him.

In support of this contention, defendant Thompson relies on *State v. Washington*, 33 N.C. App. 614, 235 S.E. 2d 903 (1977), and *State v. Weems, supra*. We find it easy to distinguish those cases from the case at hand.

We hold that defendants received a fair trial, free from prejudicial error.

No error.

Judge CLARK concurs.

Judge ERWIN dissents.

Judge ERWIN dissenting.

I vote to grant the defendants a new trial. I feel the motion to suppress the evidence should have been allowed. The record clearly shows: the van in question was parked in a public area near Fort Fisher at the end of Highway 421 in the area of the Wildlife Boat Camp. The boat landing is an open area with several street lights and borders on the water.

The record before us does not show that the defendants were violating any laws of the State at the time they were being observed by the officers, Wolak and Lee. There is not any indication that the defendants were acting in any suspicious manner, nor were they wanted for the commission of any crimes. On voir dire, Officer Wolak testified that he and Lee approached the van in order to identify the occupants, because it was late at night and break-ins had been reported in the vicinity earlier that evening. But the record does not disclose the time of the break-ins, the description of the van allegedly connected with the break-ins,

---

Robinson v. Moving and Storage, Inc.

---

or that the officers ever asked for or received either the registration card of the van in question or the driver's license.

The van had not been stopped pursuant to G.S. 20-183(a). In such cases as *State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976), the defendant was driving his motor vehicle in a careless and reckless manner; in *State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973), defendants were stopped to determine the validity and presence of the driver's license and registration card; and in *State v. Fry*, 13 N.C. App. 39, 185 S.E. 2d 256 (1971), *cert. denied* and *appeal dismissed*, 280 N.C. 495, 186 S.E. 2d 514 (1972), the police officer was investigating a traffic violation, opened the door of a van, and saw in plain view a person holding a bag of marijuana. In *State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977), our Supreme Court held that a pistol found in a Plymouth was properly admitted into evidence on the "plain view" doctrine where the evidence showed that the butt end of the pistol was readily visible to Officer Jarrell as he stood outside the Plymouth.

In *State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28 (1970), our Supreme Court held that the "plain view" doctrine applied when an officer removed a piece of chrome strip from the exterior of the car in question. No interior search of the car was necessary.

I would hold that the conduct of Officer Wolak in reaching across the seat and looking in the recessed area of the van a search. "A search, even of an automobile, is a substantial invasion of privacy." *United States v. Ortiz*, 422 U.S. 891, 896, 45 L.Ed. 2d 623, 629, 95 S.Ct. 2585, 2588 (1975). The motion to suppress should have been allowed.