STATE OF NORTH CAROLINA v. CHARLES JETHRO FRY

No. 715SC529

(Filed 15 December 1971)

1. Searches and Seizures § 1— seizure of objects in plain sight — lawfulness of seizure

A police officer may seize and use what he sees in plain sight if he is at a place where he is lawfully entitled to be.

2. Searches and Seizures § 1; Criminal Law § 84— seizure of marijuana in plain view of officer — seizure during investigation of traffic offense — validity of seizure

There was no "search" when a police officer investigating a traffic accident opened the right-side door of a van and saw in plain view a person holding a bag of marijuana in his hand, where (1) the van had been stopped on a city street for repeatedly crossing the center line; (2) the officer had to approach the van from the rear in order to determine who the driver was; (3) the right-side window was covered by a piece of cardboard, which justified the officer in opening the door. Consequently, it was lawful for the officer to seize the marijuana, and it was proper to admit the marijuana in evidence on the trial for unlawful possession of marijuana.

3. Searches and Seizures § 1; Criminal Law § 84— seizure of marijuana in plain view — failure to make arrest

Failure of an officer to actually arrest the defendant for a traffic violation committed in the officer's presence did not render inadmissible the marijuana which the officer saw in plain view in the hands of a passenger in the defendant's vehicle.

4. Searches and Seizures § 1; Criminal Law § 84— seizure of marijuana in plain view — admissibility of officer's testimony

An officer who lawfully seized marijuana found in plain view during his investigation of a traffic offense could properly testify as to the circumstances surrounding the seizure, notwithstanding the officer failed to make an arrest at the time of the seizure.

5. Narcotics § 4— possession of marijuana — sufficiency of evidence

Evidence of the defendant's guilt of possessing more than one gram of marijuana was properly submitted to the jury.

6. Criminal Law § 170— remarks of the court — harmless error

Trial court's statement to the jury that motions for directed verdicts of not guilty had been entered by all four defendants and had been granted only as to two defendants, one of whom was about to testify for the other defendants, *held* not an expression of opinion in violation of G.S. 1-180.

APPEAL by defendant from *Blount, Judge,* 18 January 1971 Session of NEW HANOVER Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the felony of having in his possession on 24 November 1970 more than one gram of marihuana. The case was consolidated for trial with those of three other defendants: McCrary, Caton and Pry. At the close of the State's evidence, the court directed a verdict of not guilty as to the co-defendants Caton and Pry; and at the close of all the evidence, the defendant McCrary withdrew his plea of not guilty and en-

State v. Fry

tered a plea of guilty as charged. Mick Leroy Watson (Watson) pleaded guilty to the possession of marihuana on the occasion in question and was used by the State as a witness.

The evidence for the State tended to show the following: Late in the afternoon of 24 November 1970, the defendant, Charles Fry, co-defendant McCrary, and State's witness Watson left Fry's home at Kure Beach and drove in Fry's van-type vehicle to the vicinity of the Ethyl Dow Road where they parked. They remained parked there approximately 30 to 45 minutes, and all three of them were smoking marihuana. Defendants Fry and McCrary had marihuana in their possession at the time. They then drove to a club at Carolina Beach called the "Landmark." They remained at this establishment for a while, then left around 11:00 p.m., taking with them Sue Carol Caton and Marvin Pry. Fry was driving his van down Oleander Drive, and the van was crossing back and forth over the center line of the road. Two officers of the Sheriff's Department of New Hanover County followed the vehicle for over a half mile before stopping it to check the driver's operator's license. When the van stopped (after the officers turned on their blue light and siren), the defendant Fry got out and ran back to the officers' vehicle before they could get out. Before Fry got out of the van, he had given Watson two plastic bags, each of which contained over one gram of marihuana and had told him to get rid of them. Watson lifted the engine cowl or hood, which opened on the inside of the vehicle, and dropped the two plastic bags given to him by Fry through the engine compartment to the ground. While Fry was out of the van talking to Deputy Sheriff Davis at the sheriff's vehicle, the other officer, Officer Howell, approached the van from the rear; and when he arrived at the window on the right side, he found that the window was covered with cardboard. Thereupon, Officer Howell opened the door and saw Watson with another plastic bag (which had been given to him by McCrary). He then observed Watson drop the third bag into the engine compartment, but this bag did not fall to the ground because it was trapped against the radiator by the fan. Officer Howell thereupon opened the cowl, picked the plastic bag from the engine compartment and saw that it contained a substance which he thought was marihuana and which later was found to contain marihuana. He directed Watson, McCrary, Caton and Pry to get out of the vehicle while he crawled under it and retrieved the other two bags which he had

seen, by using his flashlight, lying on the ground when he had opened the engine cowl from the inside. Each of the three bags was found to contain more than four grams of marihuana, and together, they contained a total of 19.6 grams. After Officer Howell had picked up the other two plastic bags from the ground, all five of the occupants of the van were arrested on the charge of possessing marihuana. The defendant Fry was not arrested for driving a vehicle recklessly; nor was he arrested for driving a motor vehicle back and forth across the center line. The officers did not have a search warrant for the vehicle.

The defendant offered evidence by the witness Marvin Dean Pry that he (Pry) did not see the defendant McCrary pass a package to anyone. Pry also stated that he was seated, at one time, on the engine cowl on top of the motor, that Watson was sitting on the right by the door, and that he (Pry) was between Watson and McCrary. Defendant offered evidence by the testimony of Mrs. R. E. McCrary that Watson told her that the defendant McCrary was just a passenger in the vehicle, did not know anything about the marihuana and was innocent. Defendant's witness T. J. Fry testified that he is the father of the defendant Fry and that Watson had told him that the defendant Fry "had nothing to do with it and did not know one thing about it." The defendant Fry did not himself go upon the witness stand and testify.

The jury returned a verdict of guilty as charged as to the defendant Fry, and from a judgment of imprisonment for three years, the defendant appealed to the Court of Appeals, assigning error.

*Attorney General Morgan and Assistant Attorney General Richmond for the State.*

*A. A. Canoutas for defendant appellant.*

MALLARD, Chief Judge.

Defendant contends that the trial judge committed error in failing to suppress the testimony of Officer Howell of the New Hanover County Sheriff's Department and in subsequently allowing the three bags of marihuana to be introduced into evidence.

Officer Howell was testifying and was asked the question: "What did you see when you opened the door?" Defendant ob-

jected. No ruling on this objection was made by the judge, and the witness did not at that time answer the question. However, the judge sent the jury out; and after extensive questioning of the witness Howell, the defendant moved, in the absence of the jury, that the evidence and testimony of Howell be suppressed. This motion was denied and the defendants excepted. After the jury returned, the witness Howell did not answer the specific question that had been propounded to him previously but did testify in response to questions, without objection, as to what he did and what he saw after he had opened the door of the van. There was no objection to his testimony that he saw Watson with the bag (later determined to contain marihuana) in his hand and as to what Watson did with it. He also testified, without objection, to finding the two bags, later determined to contain marihuana, on the ground. Watson had testified that Fry had given him the two bags which he (Watson) dropped on the ground, and that McCrary had given him the one bag which was stuck in the motor. The three bags were identified by the witness without objection; however, the defendant did object to the introduction of the three bags into evidence.

We do not think that the question of the admissibility of the testimony of the witness Howell as to what he saw when he opened the door of the van is properly presented on this record. Moreover, his testimony tended to corroborate that of the State's witness Watson and was competent for that purpose. *State v. Dixon*, 8 N.C. App. 37, 173 S.E. 2d 540 (1970) ; *State v. Culbertson*, 6 N.C. App. 327, 170 S.E. 2d 125 (1969) ; 7 Strong, N. C. Index 2d, Witnesses, § 5. "Objections to evidence *en masse* will not ordinarily be sustained if any part is competent." *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963). See also 7 Strong, N. C. Index 2d, Trial, § 15.

Ordinarily, objections to the admission of testimony or other evidence must be made at the time of its introduction. An objection to the admission of evidence is necessary to properly present a defendant's contention on appeal that the evidence was incompetent. 3 Strong, N. C. Index 2d, Criminal Law, § 162. However, in view of the holdings in the cases of *State v. McMilliam*, 243 N.C. 771, 92 S.E. 2d 202 (1956), and *State v. McMilliam*, 243 N.C. 775, 92 S.E. 2d 205 (1956), and due to the fact that defendant's counsel may have been acting under the misapprehension that no further objections were necessary to

present for review the question of competency of what Officer Howell saw when he opened the door of the van, we will consider the question.

[1, 2] A search ordinarily involves prying into hidden places, and a seizure contemplates forcible dispossession. However, a police officer may seize and use what he sees in plain sight if he is at a place where he is lawfully entitled to be. *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). See also an annotation in 26 L. Ed. 2d 893, entitled "Validity, Under Federal Constitution, of Warrantless Search of Automobile— Supreme Court Cases" and also *State v. Robbins*, 275 N.C. 537, 169 S.E. 2d 858 (1969), and the cases cited therein. In the case before us, we hold that there was no "search"; the officer seized only that which was in plain view, and no search was required. The two bags of marihuana lying on the ground and picked up by the officer were not obtained by a search, nor was the bag he saw in Watson's hand.

From the testimony of Officer Howell, he had probable cause to arrest the operator of the defendant's van for reckless driving or driving across the center line and on the wrong side of the road. It was the duty of the officer to investigate a violation of the law occurring in his presence. It was at night. The driver could not be seen or identified from the rear of the vehicle. Under the circumstances, the officers were not required to run the risk of colliding with the vehicle while passing it in an attempt to identify the operator.

When the defendant Fry stopped the van and ran back to the officers' vehicle before the officers could get out, we think that Officer Howell, in investigating the incident, had probable cause to approach the van to determine if defendant Fry was alone in the van (and therefore the operator) and that when he could not observe whether there were any other occupants of the vehicle due to the cardboard in the right side window, he had a right to open the door. This action did not constitute a search of the vehicle. The officer was not required to go around to the other side or to try to look through the windshield. The officer was on one of the public streets in New Hanover County at a place where it was his duty to be and was investigating a violation of the traffic laws that had been committed in his presence. It is not a "search" when a police officer, investigating a violation of the traffic laws, opens the door of the vehicle in-

volved when necessary to see the occupants thereof. In this case it was not an unlawful intrusion, and the officer was justified in opening the door of the van—it did not constitute an "unreasonable search."

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971). See also *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971), and *State v. Jordan,* 277 N.C. 341, 177 S.E. 2d 289 (1970).

[3] During this investigation, the officer inadvertently found evidence, in plain view, of the commission of a felony. An arrest for the commission of a felony was made. We hold that the failure of the officer to actually arrest the defendant (which he probably should have done) for the traffic violation did not render inadmissible the evidence of possession of marihuana which was in plain view while the officer was investigating, before arrest, a crime that he had probable cause to believe had been committed in his presence.

An arresting officer has the authority to seize and hold articles which he sees the accused trying to hide. *Abel v. United States,* 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683 (1960), *rehearing denied,* 362 U.S. 984, 4 L. Ed. 2d 1019, 80 S. Ct. 1056. We hold that under the circumstances of the case, Officer Howell was an arresting officer and therefore had the authority to seize and hold the bag of marihuana which he saw the State's witness Watson attempting to hide.

[4] Assuming that the admissibility of the officer's testimony is properly presented, we hold that the trial court did not commit error in failing to suppress the testimony of the witness Howell. In view of the testimony of the witness Watson, as well as the witness Howell, the trial judge did not commit error in admitting into evidence the three bags containing the marihuana.

[5] The defendant also contends that the trial judge committed error in failing to allow his motion for a directed verdict at the close of the evidence. This contention is without merit. There was plenary evidence to support the defendant's conviction of the crime charged.

[6] The defendant also contends that the trial judge committed error when the jury was informed that motions for directed verdicts of not guilty had been entered by all of the defendants and had been granted only as to the defendants Sue Carol Caton and Marvin Pry. The defendants had made their motions in open court in the presence of the jury and after the State had rested. The motions were denied as to the defendants McCrary and Fry. The defendants then proceeded to offer Marvin Dean Pry (who had been a defendant) as a witness, whereupon the court instructed the jury in the following language with respect to the status of the case at that time:

> "Ladies and gentlemen, motions have been made on the part of the defendants for directed verdicts of not guilty as to all of the defendants and motions have been granted as to the defendants Sue Carol Caton and the defendant Marvin Pry."

Under these circumstances, we do not think that this was an expression of an opinion by the judge, in violation of G.S. 1-180, or that the trial judge committed prejudicial error in thus informing the jury.

In the trial we find no error.

No error.

Judges HEDRICK and GRAHAM concur.