STATE OF NORTH CAROLINA v. PAUL RAY ALLEN, JR., LEROY BRYANT AND JOE EARL KING

No. 728SC568

(Filed 23 August 1972)

1. **Arrest and Bail § 3— officer's authority to stop motorist**

    Officers had probable cause to stop defendants' vehicle to determine validity of driver's license and registration card where they had observed it parked and unoccupied in a business district at two o'clock a.m. and where they later observed three people in the car, two of whom fit the general description of two men they had previously seen running from behind some businesses into bushes in the direction of the parked car. G.S. 20-183(a).

2. **Searches and Seizures § 1; Arrest and Bail § 3— seizure of plain view items — warrantless arrest — probable cause**

    In a prosecution for breaking and entering, larceny and safecracking, the trial court properly held that there was no illegal search where an officer inadvertently discovered a bag of money in plain view in defendants' automobile and that there was no illegal arrest where defendants' behavior, including flight of one upon confrontation with officers, gave officers sufficient probable cause to believe that a felony had been committed. G.S. 15-41(2).

3. **Criminal Law § 84; Searches and Seizures § 1— warrantless search — admissibility of evidence**

    Evidence of burglary tools was erroneously admitted into evidence where such evidence was obtained from a warrantless search of defendants' automobile not made incident to defendants' arrest, but made after defendants had been arrested and placed in custody.

ON *certiorari* to review judgments of *Cohoon, Judge,* 19 April 1971 Session, Superior Court, WAYNE County.

Defendants were charged in separate bills of indictment with breaking and entering, larceny and safecracking. Each defendant was charged with breaking and entering the office building of Weil-Creech Oil Company on 19 January 1971, forcing open a safe and stealing certain personal property including $170 in lawful money. Defendants through their appointed counsel entered pleas of not guilty, and the jury found them guilty of all three offenses. Defendant King moved to set aside the verdict of guilty of larceny due to a misnomer in the indictment. The motion was allowed and judgment was arrested as to larceny. Judgments were entered in accord with the remaining verdicts and defendants appealed. Petitions for certiorari were allowed on 24 September 1971 and 19 January 1972.

*Attorney General Morgan, by Associate Attorney Earnhardt, for the State.*

*George F. Taylor for defendant petitioner Paul Ray Allen, Jr.*

*Martin Lancaster for defendant petitioner Leroy Bryant.*

*David M. Rouse for defendant petitioner Joe Earl King.*

MORRIS, Judge.

By their first assignment of error, defendants contend that the trial judge erred in denying their motions to suppress all evidence against each defendant. Defendants timely move to suppress at the commencement of trial on the grounds that their arrest was illegal, and the court conducted two thorough voir dire examinations in the absence of the jury. Defendants argue that the findings of fact and conclusions of law based thereon were not supported by the evidence and that the police had no probable cause to stop them. It is well established in North Carolina that the findings of fact by the trial judge on the voir dire examination are binding on the appellate courts if supported by competent evidence. *State v. Accor* and *State v. Moore,* 281 N.C. 287, 188 S.E. 2d 332 (1972). Some of the evidence presented on voir dire does tend to show the following:

Goldsboro Police Officers Bell and Shackleford were patroling at two o'clock a.m. on 19 January 1971 close to several

businesses and in an area where stolen cars had been recovered when they saw a parked car bearing Raleigh city tags. The car was parked approximately a block and a half from the nearest house. The officers received the name and address of the owner upon request to the Department of Motor Vehicles. There was no traffic on the horseshoe shaped street, and no people were seen in the area until a few minutes later when two men were observed running from behind some businesses (including Weil-Creech Oil Company) into bushes in the direction of the parked car. Rather than pursue the men on foot, the officers chose to wait in their patrol car with the lights off. Since there were two possible exits for the parked car to take, the officers requested another patrol car to assist if needed and check the identity of anyone operating the parked car. Some 15 to 30 minutes later Officers Bell and Shackleford observed the previously parked car go by, and two of the three occupants fit the general description of the two men they had previously seen run into the bushes. Officer Bell and Shackleford pulled in behind the car, and cut on their blue light and siren. The car disregarded the blue light and siren, would not stop and instead increased its speed to 40-45 miles per hour in a 35 mile-per-hour zone. When the officers realized the car was not going to stop, they radioed the patrol car stationed ahead to pull out in the road to block its path which it did. The car's occupants were asked to step outside and subsequently frisked for weapons but none was found. Officer Bell requested the driver, defendant King, to show him his driver's license. Defendant King presented his driver's license and stated that the registration card was in the glove compartment of the car. Defendant King told Officer Bell it was all right to get the registration card so he entered the car from the driver's side and leaned over to get to the glove compartment. In doing so, Officer Bell observed sitting on the back seat a paper bag which was opened and leaning towards the front seat. Officer Bell saw that it contained paper money in a clip and coins and that one of the rolls of coins bore the name "Weil-Creech Oil Company." Upon observing the same, Officer Bell picked the bag up and stated, "Here's a bag of money," whereupon defendant King started running. King was apprehended and all three defendants were placed under arrest. There is no evidence that Officer Bell ever opened the glove compartment or saw the registration card. In route to the police station, Officer Bell was advised that the Weil-Creech Oil Company had been broken into. After defend-

ants had been arrested and placed in custody, Officer Bell searched under the hood of the car which had been taken to the police station and found crowbars, hammers, pliers, chisel, etc., lying between the radiator and grille. We opine that there is sufficient evidence to support the court's findings and the conclusion that: "Officer Bell had reasonable grounds to stop the Chevrolet car to check the identify and driver's license of the driver and the registration card thereof"; and "at this time no one had been placed under arrest or charged with any offense."

[1] The suspicious surrounding circumstances coupled with the authority to stop a motor vehicle to determine whether the same is being operated in violation of any of the provisions of Article 3 of Chapter 20 of the General Statutes justified the officers' stopping defendants' vehicle. G.S. 20-183 (a); *State v. Eason,* 242 N.C. 59, 86 S.E. 2d 774 (1955); see also *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133 (1954). Even if Officer Bell had previously found out the name and address of the car's owner and that it had not been reported stolen earlier, he still had reason to stop the vehicle to determine the validity of the driver's license and registration card at that time.

Defendants' allegation that G.S. 20-183 (a) unconstitutionally grants law enforcement officers "blanket authority to stop, search, and inspect" motor vehicles without reasonable cause to believe an offense is being committed is without merit because no search of the car was conducted by Officer Bell until after defendants were arrested. Nor do we believe G.S. 20-49 (2) and (4) are irreconcilable with G.S. 20-183 or that the provisions of the former are even applicable in the case at bar. *Person v. Garrett, Comr. of Motor Vehicles,* 280 N.C. 163, 184 S.E. 2d 873 (1971).

[2] There is plenary evidence that defendant King gave Officer Bell permission to retrieve the registration card from the glove compartment of the car. The owner and operator of the automobile by his consent made accessible to the officers that portion of the automobile which was beyond their vision and to which they did not have ready physical access. In this case the initial intrusion need not be supported by a warrant because Officer Bell was not conducting a search of the car at the scene of the arrest. To the contrary, he inadvertently came

across the bag of money which was readily available, in plain view and properly seized under exigent circumstances. *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Parks,* 14 N.C. App. 97, 187 S.E. 2d 462 (1972), cert. denied 281 N.C. 157 (1972); *State v. Fry,* 13 N.C. App. 39, 185 S.E. 2d 256 (1971), cert. denied and appeal dismissed 280 N.C. 495 (1972). Discovery of the bag of money, together with the previous observations and defendant King's resulting flight gave the officers sufficient probable cause to believe that a felony had been committed and subsequently to place all three defendants under arrest without a warrant. G.S. 15-41(2). *State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971). Thus the trial court's ruling that there was no illegal search nor any illegal arrest was correct, and the contents of the bag was admissible into evidence.

**[3]** We are not, however, persuaded by the contentions of the State that the burglary tools were seized pursuant to a search incident to arrest and thus admissible into evidence. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston v. United States,* 376 U.S. 364, 367, 11 L.Ed. 2d 777, 780, 84 S.Ct. 881 (1964). *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975 (1970), held that it was not unreasonable under the facts of that case to conduct a warrantless search of the car at the police station where the police had probable cause to conduct a search at the scene, but it was impractical to do so. "The Court [in *Chambers v. Maroney, supra*] held that where probable cause exists to search an automobile, it is reasonable (1) to seize and hold the automobile before presenting probable cause issue to a magistrate or (2) to carry out an immediate search without a warrant. It was noted that there is little choice in practical consequences between immediate search and immobilization of the automobile until a warrant is obtained." *State v. Jordan,* 277 N.C. 341, 344, 177 S.E. 2d 289 (1970). Under the facts of the case at bar, *Chambers v. Maroney, supra,* does not apply. There was no probable cause to conduct a warrantless search at the scene of the arrest as required under *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 2d 543, 45 S.Ct. 280 (1925); nor was it impracticable to secure a warrant. The circumstances of the case before us place the case squarely within the holding of *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct.

2022 (1971), where the Court held the evidence seized inadmissible. The evidence of burglary tools was erroneously admitted into evidence as fruits of an illegal search.

No discussion of defendant's assignments of error dealing with the sufficiency of the evidence and the trial judge's instructions to the jury is necessary.

New trial.

Judges BROCK and HEDRICK concur.