In the Matter of: JOANIE STUMBO, STEVEN STUMBO, SCOTT STUMBO, UNKNOWN STUMBO

No. COA00-408

(Filed 15 May 2001)

**1. Child Abuse and Neglect— investigation—private interview with children—Fourth Amendment rights**

There was no search or seizure implicating respondents' Fourth Amendment rights where a child protective services investigator drove to respondents' house to investigate a report that a naked two-year-old child was unsupervised in respondents' driveway, the investigator indicated to a woman who emerged from the house that she needed to speak with the children in the household privately, the woman's husband was called and came home from work, the investigator remained outside and observed the children but did not ask them any questions, she testified that she asked to speak privately with the children at least three times during the incident but was refused and that she never asked to enter the house, DSS later filed a petition to prohibit interference with or obstruction of the investigation, and the court granted the petition. The evidence in this case clearly indicates that the child protective services investigator was seeking merely to interview the children in private and did not seek to enter the home, entry into the home is not required under the statutory scheme, and the trial court's order does not authorize entry into the home. Furthermore, a private interview with a child pursuant to a child abuse or neglect investigation does not necessarily constitute a "seizure" warranting Fourth Amendment protection. The "lawful excuse" provision of N.C.G.S. § 7B-303(c) does not permit parents to interfere with or obstruct a child neglect or abuse investigation on Fourth Amendment grounds where neither a search nor a seizure is involved. N.C.G.S. § 7B-302.

**2. Child Abuse and Neglect— interference with investigation—evidence of underlying incident**

The trial court correctly excluded evidence of whether the underlying incident constituted child neglect or abuse from a hearing to determine whether respondents obstructed or interfered with the investigation under N.C.G.S. § 7B-303.

Judge Greene dissenting.

IN RE STUMBO

[143 N.C. App. 375 (2001)]

Appeal by respondents from order entered 25 January 2000 by Judge Anna F. Foster in Cleveland County District Court. Heard in the Court of Appeals 13 March 2001.

*Church, Paksoy & Wray, by John D. Church, for petitioner-appellee.*

*Home School Legal Defense Association, by Michael P. Farris and Scott W. Somerville, and Stam, Fordham & Danchi, P.A., by Paul B. Stam, for respondents-appellants.*

HUDSON, Judge.

James and Mary Ann Stumbo (respondents) appeal from an order entered 25 January 2000 instructing them to cease their obstruction of and interference with an investigation by the Cleveland County Department of Social Services (DSS) pursuant to a report of child neglect concerning respondents' daughter, Jonie Stumbo. We affirm the order of the trial court.

Article 3 ("Screening of Abuse and Neglect Complaints") of the "Juvenile Code" (set forth in Chapter 7B of our General Statutes) provides a comprehensive system for reporting and investigating allegations of child abuse and child neglect in North Carolina. The first statute in Article 3, entitled "Protective services," provides in pertinent part:

The director of the department of social services in each county of the State shall establish protective services for juveniles alleged to be abused, neglected, or dependent. Protective services shall include the investigation and screening of complaints, casework, or other counseling services to parents, guardians, or other caretakers as provided by the director to help the parents, guardians, or other caretakers and the court to prevent abuse or neglect, to improve the quality of child care, to be more adequate parents, guardians, or caretakers, and to preserve and stabilize family life.

N.C.G.S. § 7B-300 (1999). The next statute in Article 3, entitled "Duty to report abuse, neglect, dependency, or death due to maltreatment," provides in pertinent part:

Any person . . . who has cause to suspect that any juvenile is abused, neglected, or dependent . . . shall report the case of that juvenile to the director of the department of social services in the county where the juvenile resides or is found.

N.C.G.S. § 7B-301 (1999). The third statute in Article 3, entitled "Investigation by director; access to confidential information; notification of person making the report," provides in pertinent part:

(a) When a report of abuse, neglect, or dependency is received, the director of the department of social services shall make a prompt and thorough investigation in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile, in order to determine whether protective services should be provided or the complaint filed as a petition. . . . When the report alleges neglect or dependency, the director shall initiate the investigation within 72 hours following receipt of the report. The investigation and evaluation shall include a visit to the place where the juvenile resides.

N.C.G.S. § 7B-302 (1999). The fourth statute in Article 3, entitled "Interference with investigation," provides in pertinent part:

(a) If any person obstructs or interferes with an investigation required by G.S. 7B-302, the director may file a petition naming said person as respondent and requesting an order directing the respondent to cease such obstruction or interference. The petition shall contain the name and date of birth and address of the juvenile who is the subject of the investigation, shall specifically describe the conduct alleged to constitute obstruction of or interference with the investigation, and shall be verified.

(b) For purposes of this section, obstruction of or interference with an investigation means refusing to disclose the whereabouts of the juvenile, refusing to allow the director to have personal access to the juvenile, refusing to allow the director to observe or interview the juvenile in private, refusing to allow the director access to confidential information and records upon request pursuant to G.S. 7B-302, refusing to allow the director to arrange for an evaluation of the juvenile by a physician or other expert, or other conduct that makes it impossible for the director to carry out the duty to investigate.

(c) Upon filing of the petition, the court shall schedule a hearing to be held not less than five days after service of the petition and summons on the respondent. . . . If at the hearing on the petition the court finds by clear, cogent, and convincing evidence that the respondent, without lawful excuse, has obstructed or interfered with an investigation required by G.S. 7B-302, the court may

order the respondent to cease such obstruction or interference. The burden of proof shall be on the petitioner.

N.C.G.S. § 7B-303 (1999). These statutes provide the legal framework within which the events in the present case transpired.

The evidence presented at the 28 September 1999 hearing tended to show the following facts. On 9 September 1999, Tasha Lowery, a child protective services investigator for DSS, received a report that a naked, two-year old child had been seen unsupervised in the driveway of a house in Kings Mountain. Lowery drove to the house to investigate. A woman came out of the house and introduced herself as Mrs. Stumbo. Lowery introduced herself to Mrs. Stumbo and explained why she was there. Lowery further explained to Mrs. Stumbo that, as part of her investigation, she needed to speak with the children privately. In response, Mrs. Stumbo indicated that she would need to contact her husband. This conversation took place outside of the home in the driveway. During the conversation, two children were playing outside. Mrs. Stumbo then contacted Mr. Stumbo at work, using a cordless phone to call him while she and Lowery remained outside in the driveway. Lowery then spoke on the phone to Mr. Stumbo. Lowery introduced herself to Mr. Stumbo over the phone and explained why she was at his home. Mr. Stumbo briefly tried to explain how it was that the two-year old had been out in the yard naked and unattended. He also agreed to come home from work to talk further with Lowery.

While Mr. Stumbo was on his way home, Mrs. Stumbo called an attorney. Lowery spoke with the attorney on the phone and explained who she was and why she was there. At one point, apparently while waiting for Mr. Stumbo to arrive, Lowery went around to the back of the home with Mrs. Stumbo and sat on the back deck. At that time she was close enough to all four of the Stumbo children to observe them in detail. She did not see any bruises, marks, or other behavior to lead her to suspect abuse or neglect. She refrained from asking the children any questions because she had been asked by Mrs. Stumbo not to speak with the children, and she was honoring that request. Lowery testified that Mrs. Stumbo was in an "uproar," that Mrs. Stumbo indicated she had a headache or that something was wrong, that she needed to see a neurologist, and that she didn't have time for the investigation. Mr. Stumbo arrived home after approximately twenty or thirty minutes, and spoke with Lowery. Mr. Stumbo told Lowery that he felt he had a privacy right to refuse to allow her to interview his children, and to refuse to allow her to enter his home,

because he felt there was no good reason for the investigation. Lowery told Mr. Stumbo that it was the policy of DSS to interview children who are the subjects of an investigation. After this conversation, the family went into the house and closed the door, and Lowery left. Lowery testified that she requested to speak to the children privately at least three times during the incident but was unable to complete her investigation because Mr. and Mrs. Stumbo did not allow her to conduct any interviews with the children. She also testified that she never asked to enter the house.

On 16 September 1999, DSS filed a "petition to prohibit interference with or obstruction of child protective services investigation" pursuant to G.S. § 7B-303. Respondents filed a brief opposing the petition. The cause came before the Cleveland County Juvenile Court for hearing on 28 September 1999. At the hearing, having heard the arguments by both parties, the trial court explained its view that because the investigation did not involve a "search" or a "seizure," the Fourth Amendment did not apply and no probable cause showing was necessary.

The trial court entered an order on 25 January 2000, making seven findings of fact, including:

4. . . . Ms. Lowery was not allowed to speak with the children nor was she allowed to go into the house. . . . Tasha Lowery made at least three requests to speak with the children and was denied. Ms. Lowery is required to conduct a private [interview] with all the children in the household. . . .

7. N.C. General Statute 7B-303 specifically provides that obstructing or interfering with an investigation includes the denial of private interviews with the juveniles.

The trial court concluded that respondents obstructed or interfered with the investigation "by refusing to allow Tasha Lowery as a representative of the Director of Social Services for Cleveland County, to observe or interview the Juveniles in private without lawful excuse." The trial court ordered respondents to permit DSS "to conduct an investigation as required by 7B-302," and ordered respondents not to interfere with or obstruct "the investigation as set forth in 7B-303(a) and 7B-303(b)." Respondents appeal from this order.

On appeal, respondents raise four assignments of error. We first address respondents' assignments of error numbered 2, 3 and 4, all of which involve one distinct set of interrelated arguments. These argu-

ments are: (1) that social workers conducting a DSS investigation are "state actors" for Fourth Amendment purposes; (2) that the investigation mandated by G.S. § 7B-302 requires that the investigating social worker enter the home in question, and conduct private interviews with the children; (3) that entry into the household by a social worker is a "search," and a private interview of a juvenile by a social worker is a "seizure," both requiring probable cause under the Fourth Amendment; and (4) that the trial court's order, instructing respondents to cease interfering with and obstructing the investigation, constitutes reversible error because (a) it is a warrant issued without probable cause, and (b) the "lawful excuse" provision in G.S. § 7B-303(c) allows parents to interfere with and obstruct a child neglect investigation on Fourth Amendment grounds. Respondents have expressly stated that they do not contend that G.S. § 7B-303 is, in and of itself, unconstitutional.

[1] Whether a search or a seizure has, in fact, occurred is always a threshold question that must be resolved before determining whether the protections guaranteed by the Fourth Amendment apply. *See State v. Raynor*, 27 N.C. App. 538, 540, 219 S.E.2d 657, 659 (1975). "A search ordinarily involves prying into hidden places, and a seizure contemplates forcible dispossession." *State v. Fry*, 13 N.C. App. 39, 44, 185 S.E.2d 256, 259-60 (1971), *cert. denied*, 280 N.C. 495, 186 S.E.2d 514 (1972). Here, we need not reach respondents' contention that social workers conducting a DSS investigation of child neglect are state actors for Fourth Amendment purposes because this case involves neither a search nor a seizure and, therefore, does not implicate respondents' Fourth Amendment rights.

Respondents' contentions that an investigation pursuant to G.S. § 7B-302 requires entry into the home, that Lowery did, in fact, seek entry into the home in this case, and that the trial court's order "was a judicial warrant for a search of the Stumbo home" are without merit. Respondents have attempted to portray this case as involving a direct conflict between respondents' right to refuse entry into their home, and the statutory investigation mandated by G.S. § 7B-302. For example, in their brief to this Court, respondents contend that Lowery testified at the hearing that when she arrived at respondents' home she asked "to be allowed to enter the home and to interview each of the children privately." Further, counsel for respondents argued to the trial court at the hearing that DSS, through Lowery, sought to "enter the home without probable cause." To the contrary, Lowery testified that she never asked to enter the home, and there is

no testimony in the transcript or other evidence in the record to contradict this assertion. Furthermore, Lowery testified that when she spoke with Mr. Stumbo on the phone, "[she] told him that [she] needed to talk with everybody in the household" and that she has been trained to "make a home visit, talk with the parents privately and talk with the children privately in order to conduct the investigation." Thus, the evidence clearly indicates that Lowery was seeking merely to interview the children in private, and did not at any time seek to enter the home.

Furthermore, entry into the home does not appear to be required under the statutory scheme. G.S. § 7B-302(a) states that an investigation pursuant to a report of abuse or neglect "shall include a visit to the place where the juvenile resides." As noted by the dissent, similar language is found in the North Carolina Administrative Code. *See* N.C. Admin. Code tit. 10, r. 41I.0305 (January 2001). Although this provision in G.S. § 7B-302(a) is somewhat ambiguous, we believe "a visit to the place where the juvenile resides" means merely a personal visit to the home as distinguished from, for example, an investigation conducted by telephone interviews, or an investigation consisting of interviews conducted at the offices of DSS. We do not read this language as requiring physical entry into the home itself. Thus, a visit such as the one that occurred in this case, where a social worker personally drives to the home and seeks to speak with the children in person but does not seek to enter the home, would constitute "a visit to the place where the juvenile resides."

Moreover, the trial court's order does not authorize entry into the home. The order simply finds that respondents "obstructed or interfered with this investigation by refusing to allow Tasha Lowery . . . to observe or interview the Juveniles in private," and orders respondents "to not obstruct, interfere with the investigation as set forth in 7B-303(a) and 7B-303(b)." The dissent appears to interpret the trial court's finding that "Ms. Lowery is required to conduct a private [interview] with all the children *in the household*" as a finding that Ms. Lowery is required to conduct an interview of the children *while physically inside of the house*. However, we believe the phrase "in the household" was intended to modify the phrase "all the children," such that "all the children in the household" was intended to mean "all the children in the family," or "all the children who live in the household."

As to whether this case involves a "seizure," respondents cite three cases in support of the proposition that a private interview with

a child for purposes of a DSS investigation of neglect or abuse is a "seizure." These cases do not stand for this proposition. In *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000), police officers seized two children from their home without a court order, placed the children in a county institution for several days, and subjected them to highly invasive anal and vaginal physical examinations without judicial authorization and without notifying their parents. In *Tenenbaum v. Williams*, 193 F.3d 581 (2d. Cir. 1999), *cert. denied*, 529 U.S. 1098, 146 L. Ed. 2d 776 (2000), a DSS caseworker removed a juvenile from school without parental permission or a court order and the juvenile was then subjected to a vaginal and anal medical examination at a hospital emergency room. In *Robinson v. Via*, 821 F.2d 913 (2d Cir. 1987), a state assistant attorney and a state trooper investigating a child abuse allegation seized two juveniles without a court order and against the mother's will (the seizure required forcibly restricting the mother). The juveniles were taken to the police barracks where they remained for over two hours until a temporary custody order was entered by a judge. Obviously, these cases are very different from the circumstances here, where the social worker merely sought to carry out the mandate of the statute by interviewing the children in private. The cases cited by respondents do not compel the conclusion that a private interview with a child, pursuant to a child abuse or neglect investigation, necessarily constitutes a "seizure" warranting Fourth Amendment protection.

Because it is not squarely before us, we need not reach the issue of whether the "lawful excuse" provision in G.S. § 7B-303(c) permits parents to interfere with or obstruct a child neglect or abuse investigation on Fourth Amendment grounds where a search or a seizure has occurred without probable cause. The facts here do not involve a search or a seizure, and the relevant statutory scheme does not require any conduct by DSS that necessarily constitutes a search or a seizure. Therefore, this case does not implicate the Fourth Amendment rights of respondents. Accordingly, we hold that the trial court's order, instructing respondents to cease interfering with and obstructing the investigation, does not constitute error. Moreover, we hold that the "lawful excuse" provision in G.S. § 7B-303(c) does not permit parents to interfere with or obstruct a child neglect or abuse investigation on Fourth Amendment grounds where neither a search nor a seizure is involved. Thus, respondents must comply with the trial court's order, including permitting DSS to conduct private interviews with their children.

[2] In their fourth and final assignment of error, respondents contend that the trial court erred by excluding certain testimony offered at the hearing. At the hearing, respondents sought to admit testimony regarding how their daughter Jonie came to be found outside of the home naked and unattended. As the trial court explained at the hearing, the purpose of a G.S. § 7B-303(c) hearing is to determine whether the respondents have obstructed or interfered with the investigation without lawful excuse, not to determine whether the underlying incident which led to the allegation of neglect or abuse actually involved neglect or abuse. The trial court was correct in its interpretation of the purpose of such a hearing, and did not err in excluding the evidence in question. This assignment of error is overruled.

Affirmed.

Judge McCULLOUGH concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting.

Because I believe the investigation ordered in this case and mandated by section 7B-302 constitutes a search within the meaning of the Fourth Amendment, I dissent.

Section 7B-302 mandates the Director of the Department of Social Services (the Director) to make a "prompt and thorough investigation" of all reports of abuse, neglect, and dependency. N.C.G.S. § 7B-302(a) (1999). Although the statute does not define what is required to accomplish a "thorough investigation," it does provide the "investigation . . . shall include a visit to the place where the juvenile resides." *Id.* The statute also provides the Director is to "have personal access to the juvenile" and interview the child in private. N.C.G.S. § 7B-303(b) (1999). The North Carolina Administrative Code (Code) sets out, in some detail, the requirements for a "thorough" investigation. 10 NCAC 41I .0305 (June 2000). The Code mandates the Director, among other things, assess "whether the specific environment in which the child or children is found meets the child's or children's need for care and protection[,]" make a "visit to the place where the child or children reside," and interview the "victim child." 10 NCAC 41I .0305 (a),(d) & (e) (June 2000). Thus, the Director is required to make an inspection of the residence in which the child (the subject of the child abuse/neglect report) resides, necessitating

**IN RE STUMBO**

[143 N.C. App. 375 (2001)]

an entry into the home, and to speak personally with the reported victim child.[1]

Entry into the home of a person suspected of child abuse/neglect by the Director for the purpose of ascertaining if the child has been abused/neglected is a search by a government actor and thus implicates the Fourth Amendment. *Cf. Ferguson v. Charleston,* —— U.S. ——, ——, —— L. Ed. 2d ——, ——, 69 U.S.L.W. 4184, 4187 (2001) (testing of urine for drugs by private hospital is search by state actor). An interview of a reported victim child by the Director, without the consent of the child's parents, constitutes a seizure of the child within the meaning of the Fourth Amendment. *See Graham v. O'Connor,* 490 U.S. 386, 395 n.10, 104 L. E. 2d 443, 455 n.10 (1989) ("seizure" under the Fourth Amendment occurs when government actors "by means of [a] physical force or show of authority . . . in some way restrain[] the liberty of a citizen"); *see also Tenebaum v. Williams,* 193 F.3d 581, 602 (2d Cir. 1999), *cert. denied,* 529 U.S. 1098, 146 L. Ed. 2d 776 (2000). This Fourth Amendment right can be asserted by the child's parents on behalf of the child. *Tenebaum,* 193 F.3d at 601.

Whether the search or seizure violates the teaching of the Fourth Amendment is dependent on the reasonableness of the search or seizure, as only unreasonable searches and seizures are proscribed. Whether the search or seizure is reasonable requires balancing the intrusion of the individual's interest in privacy against the "importance of the governmental interests alleged to justify" the search. *O'Connor v. Ortega,* 480 U.S. 709, 719, 94 L. Ed. 2d 714, 724 (1987) (internal quotation marks and citation omitted). Stated another way, a party's interest in privacy must be balanced against some "special need" advanced by the State. *Ferguson,* —— U.S. at ——, —— L. Ed. 2d at ——, 69 U.S.L.W. at 4188. Depending on the strength of the competing interest, our courts have on occasion: completely suspended probable cause, *Skinner v. Railway Labor Exec. Assn.,* 489 U.S. 602, 633, 103 L. Ed. 2d 639, 670 (1989) (drug testing of railroad employees); required a showing of probable cause, *Ferguson,* —— U.S. at ——, —— L. Ed. 2d at ——, 69 U.S.L.W. at 4189-90 (testing for drugs in pregnant women); and required a showing of reasonable suspicion, *O'Connor,* 480 U.S at 726, 94 L. Ed. 2d at 729 (search of public employee's desk by employer); *New Jersey v. T.L.O.,* 469 U.S. 325,

---

1. The majority construes section 7B-302(a) as only requiring "a personal visit to the home" and not "physical entry into the home itself." I disagree. Without physically entering the home, the Director would be unable to assess whether the environment in which the child is found meets the child's need for care and protection.

341, 83 L. Ed. 2d 720, 734 (1985) (Powell, J., concurring) ("[w]here a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause," our courts "have not hesitated to adopt such a standard").

The privacy interest of property owners/lessees (home owner) in their property is, without dispute, substantial. The right of any person, including minor children, to be free from governmental seizure is substantial. Likewise, governmental interest in protecting the safety and well-being of children is substantial and is well served by mandating a timely section 7B-302 investigation of reports of child abuse/neglect. This substantial governmental interest must, however, be weighed in the context of the Director's obligation to "make an immediate oral and subsequent written report" of its findings to the district attorney and the "appropriate local law enforcement agency." N.C.G.S. § 7B-307(a) (1999). The district attorney, after receipt of this report, is required to initiate a criminal investigation and determine whether criminal prosecution is appropriate.[2] *Id.* Indeed, this statutorily mandated disclosure to law enforcement "provides an affirmative reason for enforcing the strictures of the Fourth Amendment." *Ferguson,* —— U.S. at ——, —— L. Ed. 2d at ——, 69 U.S.L.W. at 4190. Furthermore, if the person suspected of child abuse/neglect fails to comply with a section 7B-303 order directing non-interference with the investigation, that person can be imprisoned pursuant to a finding of civil or criminal contempt,[3] thus, further subjecting the person to criminal penalties. N.C.G.S. § 7B-303(f) (1999).

A proper balance of these competing interests suggests an intermediate standard of reasonableness as a prerequisite to obtaining a section 7B-303(c) order. In other words, the Director must be required to show by clear and convincing evidence there are reason-

2. A parent or other person providing care to or supervision of a child less than 16 years of age is subject to prosecution for criminal child abuse. N.C.G.S. §§ 14-318.2 & 14-318.4 (1999). More generally, parents have "an affirmative legal duty to protect and provide for their minor children," *State v. Walden,* 306 N.C. 466, 473, 293 S.E.2d 780, 785 (1982), and a violation of this duty is a misdemeanor, N.C.G.S. § 14-316.1 (1999).

3. Because a person refusing to open his house for inspection by a social worker investigating a report of child abuse/neglect does subject himself to imprisonment, this situation is different from the facts presented in *Wyman v. James,* 400 U.S. 309, 27 L. Ed. 2d 408 (1971) (Fourth Amendment not implicated by inspection of home of recipient of monies under the Aid to Families with Dependent Children because the refusal to permit the inspection resulted only in loss of benefits, with no criminal penalties).

able grounds for suspecting a person(s) has abused/neglected the child being investigated and has, without lawful excuse, obstructed or interfered with the investigation mandated by section 7B-302.[4] Because of the substantial governmental interest in protecting children and the need to act quickly, as well as the additional time likely required to gather evidence in support of probable cause, it would be ill advised to utilize the probable cause standard.[5] Also, due to the sanctity of private dwellings and the potential for criminal investigation/prosecution arising from the section 7B-302 investigation, a total suspension of the probable cause standard is not appropriate. A total suspension would permit entry into a home and interviews with the reported victim child, based simply on a totally unsubstantiated report of abuse/neglect, as long as there is a showing that the home owner/person "without lawful excuse, has obstructed or interfered with [the] investigation." N.C.G.S. § 7B-303(c) (1999).

In this case, the trial court entered an order directing respondents not to obstruct or interfere with any investigation by DSS "as required by 7B-302."[6] As this investigation mandated DSS inspect the residence in which the child lived to interview Joanie Stumbo, the trial court was required, prior to issuing a section 7B-303(c) order, to make a finding there existed reasonable grounds for suspecting the respondents had abused/neglected Joanie Stumbo.[7] The failure to

---

4. An anonymous report of abuse/neglect, which is permitted under section 7B-301, would rarely, in itself, constitute reasonable grounds for suspecting a person to have abused/ neglected a child. *Cf. Florida v. J.L.*, 529 U.S. 266, 270, 146 L. Ed. 2d 254, 260 (2000) ("an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity") (internal quotation marks and citations omitted).

5. I do note the Legislature has mandated use of the probable cause standard for issuance of an *ex parte* order entered pursuant to section 7B-303(d). N.C.G.S. § 7B-303(d) (1999) (there must be "probable cause to believe . . . the juvenile is at risk of immediate harm"). This is an obvious recognition by our Legislature of the need to protect the privacy interest of the person to be investigated in the face of a report of abuse/neglect of a child.

6. The evidence in the record reveals the DSS worker (agent of the Director) testified the respondents did not allow her to conduct interviews with the children and did not allow her to enter the house. The petition filed seeking the section 7B-303(c) order alleges respondents' attorney "advised [respondents] not to allow a private interview with the children nor access [to] their home." The trial court found as fact that the DSS worker "was not allowed to speak with the children nor was she allowed to go into the house." The trial court further found the DSS worker "is required to conduct a private [interview] with all the children in the household."

7. It is not every investigative act of the Director that implicates the Fourth Amendment. For examples: the Director is to interview any person identified in the report "having information concerning the condition of the child[;]" the Director is to review any school, medical, etc. records that may provide information about the child;

make this finding requires reversal of the order. This case must be remanded for a new hearing, at which time DSS must be given the opportunity to present new evidence.

---

and the Director "shall check the county agency's records and the North Carolina Central Registry of child abuse, neglect, and dependency reports to ascertain if any previous reports . . . have been made." 10 NCAC 41I .0305(b),(g) & (h)(4).